IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| LUIS CORDOVA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 2:26-cv-03174-TLP-tmp |
| v. | ) | |
| | ) | |
| CHRISTOPHER BULLOCK, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER GRANTING IN PART PETITON FOR WRIT OF HABEAS CORPUS**

Petitioner Luis Cordova, a noncitizen detained by Immigrations and Customs Enforcement ("ICE"), petitions for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (ECF No. 1.) The Court ordered Respondent to show cause why the Writ should not be granted. (ECF No. 5.) Respondent responded and Petitioner replied. (ECF Nos. 8, 9.) For the reasons below, the Court **GRANTS IN PART** and **ORDERS** Respondent to provide Petitioner with an individualized bond hearing within seven days where Respondent must prove by clear and convincing evidence that Petitioner is a danger to the community or a flight risk. If Respondent fails to hold the bond hearing timely or if it fails to make such a showing, the Court **ORDERS** Respondent to immediately release Petitioner from Custody.

**BACKGROUND**

Petitioner is a citizen of Mexico. (ECF No. 8-2 at PageID 45.) Petitioner states that he has been in the country since 2019 and is currently married to a United States citizen.[1] (ECF Nos. 1, 5.) On October 1, 2025, state and federal officers arrested Petitioner and charged him with resisting and assaulting a federal law enforcement officer. (ECF No. 8-2 at PageID 45; ECF No. 9 at PageID 57.) ICE then took Petitioner into custody after his release from the Shelby County Detention Center. (ECF No. 8-2 at PageID 46.) The Court, however, granted Petitioner's Petition for Writ of Habeas Corpus on December 18, 2025, and ordered his immediate release because ICE has not provided him with a bond hearing. *Cordova v. Ladwig*, No.1:25-cv-03037-TLP-jay, Dkt 29 (W.D. Tenn. Dec. 18, 2025.).

Petitioner pleaded guilty on May 22, 2026, to the lesser charges of Attempted Escape from Custody under 18 U.S.C. § 751(a) and Improper Entry by Alien under 8 U.S.C. § 1325(a). (ECF No. 8-3 at PageID 47.) The Court sentenced Petitioner to time served and placed him on a term of supervised release for nine months. (ECF NO. 8-3 at PageID 48–49.) Petitioner states that he "has fully complied with federal supervised release and with his immigration supervision regimen." (ECF No. 1 at PageID 2.) Petitioner also claims that "[h]is wife has petitioned for his residency." (*Id.*)

On September 10, 2026, ICE again took Petitioner into custody when he showed up for his check-in. (ECF No. 8-2 at PageID 45–46.) Petitioner's I-213 Narrative states that, "[d]ue to [Petitioner's] federal violation and the material change in his criminal history, ERO Memphis took [him] back into custody for further immigration proceedings." (ECF No. 8-2 at PageID 46.)

---

[1] Petitioner initially states that he has been in the country since 1999, his birth year. (ECF No. 1 at PageID 1.) Petitioner, however, later states that he entered the United States in 2019. (*Id.* at PageID 1, 5)

Petitioner maintains that he is entitled to a bond hearing under 8 U.S.C. § 1226(a) because of his long-term residence in the United States. (ECF No. 1 at PageID 11–12.) Petitioner also contends that ICE's rationale for redetaining him violates his due process rights. Petitioner argues that "all changes in [his] circumstances have been *favorable* with respect to the flight-risk/danger assessment under 8 U.S.C. § 1226(a)." (ECF No. 9 at PageID 57.) He points out that "the significance of his criminal misconduct was minimized by his conviction under § 751(a) and his sentence of time served"; that "he showed up to this Court twice and performed perfectly on supervision from December 2025 to September 2026"; and, that "his wife filed a petition to obtain lawful status for him." (ECF No. 9 at PageID 63.)[2] Petitioner thus concludes that "no change in circumstances since December 2025 could justify [his] detention." (*Id.* at PageID 61)

Respondent agrees that 8 U.S.C. 1226(a) applies to Petitioner's detention but argues that the Court should reject his Petition because he failed to exhaust his administrative remedies. (ECF No. 8 at PageID 38.) Petitioner counters that the Court should not require Petitioner to exhaust his administrative remedies because the Immigration Court would place the burden of proof on him regarding danger to the community and flight risk.[3] (ECF No. 9 at PageID 65.) And Petitioner argues that placing the burden on him would violate his due process rights. (*Id.*) The Court agrees and finds that Petitioner is entitled to a bond hearing in which it must prove by

---

[2] Petitioner also claims that his redetention violates the Court's December 2025 Order granting his release. (ECF No. 9 at PageID 63–64.) The Court rejected this argument in its Order denying Petitioner's Motion to clarify the Court's December 2025 Order. *Cordova v. Ladwig*, No. 1:25-cv-03037-TLP-jay, Dkt 36 (W.D. Tenn. Oct. 23, 2026)

[3] Petitioner provided notice on the day the Court entered this Order that Petitioner has requested a bond hearing to the Immigration Court. (ECF No. 11.) But he still maintains that the bond hearing procedures are constitutionally deficient. (*Id.*)

clear and convincing evidence that Petitioner is a danger to the community or a flight risk, or else Respondent must release Petitioner immediately.

**ANALYSIS**

Federal courts may grant a Writ of Habeas Corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). These protections apply to noncitizens as well as citizens. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Noncitizens who have 'passed through our gates, even illegally, may be expelled only after proceedings conforming to the traditional standards of fairness encompassed in due process of law.'" *Lopez-Campos*, 175 F.4th at 732 (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 2012 (1953)).

As a preliminary matter, the Court rejects Petitioner's argument that ICE's rationale for redetaining him violated his due process rights. To be sure, Petitioner has made positive strides since being released from ICE custody in December 2025. But Petitioner ignores that he pleaded guilty to a federal crime between that time and his redetention in September 2026. ICE's conclusion that Petitioner had a material change to his criminal history was therefore correct.

The Court now turns to whether the Court should order Respondent to provide petitioner with a bond hearing before an immigration judge. On May 11, 2026, the Sixth Circuit decided *Lopez-Campos*, affirming that a noncitizen who has spent "significant time . . . within the interior of the United States," and who has not committed an offense rendering them ineligible under § 1226(c), may not be detained without an individualized bond hearing. *Id.* at 734 (6th Cir. 2026). "To hold otherwise would subject long-term law-abiding residents in the United States . . . to the hardship of mandatory detention without due process." *Id.* at 735. Respondent acknowledges that *Lopez-Campos* applies to Petitioner's case. (ECF No. 8 at PageID 38.) Respondent,

nevertheless, contends that the Court should require Petitioner to exhaust his administrative remedies before seeking federal court intervention. (*Id.*)

Administrative exhaustion is required when mandated by Congress. *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). But when, as here, no statute mandates exhaustion, whether to require exhaustion of administrative remedies lies within "sound judicial discretion." *Id.* In exercising that discretion, "federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *Id.* at 146; *see Smith v. United States Sec. & Exch. Comm'n*, 178 F.4th 312, 325 (6th Cir. 2026) ("This rule is designed to afford the agency the opportunity to reconsider its position in the first instance, and to promote efficient litigation." (citation omitted)). Institutional interests are "protecting administrative agency authority and promoting judicial efficiency." *McCarthy*, 503 U.S. at 145.

At times, the interest of the individual weighs heavily against the institutional interests at stake. Examples of this occur when "unreasonable or indefinite timeframe for administrative action" creates undue prejudice; when administrative remedies are inadequate because the agency is not "empowered" to grant effective relief; or when "an administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it." *Id.* at 146–48. A court may also waive exhaustion when pursuing administrative remedies would be futile. *Shearson v. Holder*, 725 F.3d 588, 594 (6th Cir. 2013) (citation omitted).

Before *Lopez-Campos*, this Court routinely held that administrative exhaustion was futile. *See, e.g.*, *Ladwig*, 2025 WL 3689158, at *3–4 (W.D. Tenn. Feb. 13, 2026). That was because the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado* made exhausting

administrative remedies a fruitless endeavor. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 228 (BIA 2025) (holding that aliens "who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer" because "[r]emaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an 'admission'"). For those petitioners to exhaust their administrative remedies, they would have needed to appeal to the same Board of Immigration Appeals that mandated their detention in the first place.

But these considerations are *usually* no longer present in a post-*Lopez-Campos* landscape. The Sixth Circuit has now ruled that noncitizens like Petitioner are entitled to a bond hearing. And the need for a bond hearing was the entire underpinning of the Court's earlier holdings excusing exhaustion. With these developments in mind, the Court has been requiring Petitioners to exhaust their administrative remedies before seeking federal court intervention.

The twist here, however, is that Petitioner is alleging any bond hearing before an immigration judge without a court order would be constitutionally deficient because the burden would be on him to establish that he is not a danger to the community or a flight risk. (ECF No. 9 at PageID 65.) The Court agrees and joins other courts in finding that placing the burden on an immigrant to show that he or she is not a danger to the community or a flight risk violates due process.[4]

"It is not disputed that § 1226(a) is silent as to what burden of proof applies in bond hearings, and who bears that burden." *Mkhaitir v. Mullin*, No. 26-183-DLB, 2026 WL 1415034,

[4] Petitioner also seeks a court order requiring the Immigration Judge to consider his ability to pay a bond. (ECF No. 12 at PageID 129.) But he does not explain how failure to consider that factor would amount to a due process violation. The Court therefore *does not* order that the Immigration Judge has to consider Petitioner's ability to pay as part of the analysis.

at *4 (E.D. Ky. May 20, 2026). And the Sixth Circuit has not addressed the issue. The BIA, however, puts "[t]he burden on the [noncitizen] to show to the satisfaction of the Immigration Judge that he or she merits release on bond." *In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006). But many District Courts, including many in this Circuit, and the First and Second Circuits have applied the balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to find that the Due Process Clause of the Fifth Amendment requires the Immigration Judge to put the burden on the government to show danger to the community and fight risk. *See Castaneda-Castano v. Daley*, No. 26-145-DLB, 2026 WL 1223095, at *7 (E.D. Ky. May 4, 2026) (collecting cases); *see also Hernandez-Lara v. Lyons*, 10 F.4th 19, 27–35 (1st Cir. 2021); *Velasco Lopez v. Decker*, 851 978 F.3d 842, 851–855 (2d Cir. 2020).

The *Mathews* factors are: (1) "the private interest that will be affected by the initial action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, in any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court agrees with the reasoning of other courts and finds that these factors support placing the burden on the government to justify Petitioner's continued detention.

Under the first factor, "the private interest affected by the official action is the most significant liberty interest there is – the interest of being free from imprisonment." *Velasco Lopez,* 978 F.3d at 851. And second, the risk of erroneous deprivation is high in immigration proceedings given the lower procedural safeguards, especially if Petitioner "must face the difficulty of proving a negative." *J.Z.S. v. Fields*, No. 26-80-DLB, 2026 WL 1031320, at *10 (E.D. Ky. Apr. 16, 2026). As for the third factor, the government's administrative cost of

shouldering the burden is slight because the government already has access to records that go towards meeting their burden. *Velasco Lopez*, 978 F.3d at 855. And putting that burden on the government can even promote its interest by "minimizing the enormous impact of incarceration where it serves no purpose." *Id.*

Because the *Mathews* factors weigh heavily in favor of putting the burden of proof on the government to justify continued detention, the Immigration Court would violate Petitioner's due process rights if it shifted that burden to him. The Court will accordingly excuse exhaustion in Petitioner's case and order Respondent to provide him with a constitutionally adequate bond hearing before an immigration judge. "Additionally, consistent with other courts who have concluded that the government must bear the burden of proof, [the] Court concludes that a clear and convincing standard provides the appropriate level of procedural protection." *Mkhaitir*, 2026 WL 1415034, at *6 (quoting *Velasco Lopez*, 978 F.3d at 856).

## <u>CONCLUSION</u>

The Court therefore **GRANTS in Part** the Petition for Writ of Habeas Corpus and **ORDERS** Respondent either to release Petitioner or to provide him with a bond hearing before an Immigration Judge within seven days of the entry of this Order. If Respondent provides Petitioner with a timely bond hearing, the following must apply:

(1) Respondent must provide a copy of this Order to the Immigration Judge before any hearing;

(2) the Immigration Judge shall have jurisdiction over the matter and be empowered to grant bond;

(3) Respondent must bear the burden of persuasion justifying Petitioner's continued detention by referencing clear and convincing evidence on the record that Petitioner is either a flight risk or a danger to the community;

(4) the Immigration Judge must consider the evidence submitted by Petitioner, carefully weigh the nine relevant factors from Matter of Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006), and explain all legal and factual conclusions;

(5) the Immigration Judge shall consider and explain, whether less restrictive alternatives to detention can reasonably address the government's interest; and

(6) Respondent shall file a Status Report with the Court within two business days of the bond hearing or of the Petitioner's release. The certification shall note when a bond hearing was held, whether bond was granted or denied, and the reasons for the decision.

**SO ORDERED**, this 26th day of October, 2026.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE